UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| MIKALAI LAMAKA, | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : |
| | : |
| RUSSIAN DESSERTS INC. and | : |
| RAFAEL IBRAGIMOV, | : |
| | : |
| Defendants. | : |

**REPORT AND RECOMMENDATION**

18 Civ. 7354 (ILG) (VMS)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Mikalai Lamaka ("Plaintiff") brought this action against Defendants Russian Desserts Inc. and Rafael Ibragimov (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., New York Labor Law ("NYLL"), N.Y. Lab. L. §§ 650 et seq., and regulations promulgated thereunder for failure to pay minimum and overtime wages and for failure to furnish accurate wage statements. Defendants failed to appear, answer or otherwise respond to Plaintiff's amended complaint. Plaintiff moved for a default judgment. District Judge I. Leo Glasser granted a default judgment on liability in favor of Plaintiff.

In his motion for a default judgment, Plaintiff sought $23,744.00 in unpaid minimum and overtime wages; $23,744.00 in liquidated damages; $5,000.00 in statutory penalties; and attorneys' fees and costs. Finding that Plaintiff's claim for damages, attorneys' fees and costs needed further substantiation, District Judge Glasser referred the matter to the undersigned for an inquest.

For the reasons explained below, this Court respectfully recommends that the Court adopt the findings of fact set forth in Section II and that Plaintiff be awarded the following damages:

1

1. $4,200.00 in unpaid minimum wages;

2. $10,368.00 in unpaid overtime wages;

3. $14,568.00 in liquidated damages;

4. $5,000.00 in statutory damages;

5. $5,208.00 in attorneys' fees;

6. $400.00 in costs; and

7. Post-judgment interest to be calculated by the Clerk of the Court.

This Court further recommends that Defendants be held jointly and severally liable to Plaintiff for the full amount of damages in the amount of $39,744.00, plus post-judgment interest.  This Court respectfully recommends that Plaintiff's request to amend the amended complaint to include a claim for unpaid wages for Plaintiff's last week of work in August 2018 be denied.

## I.    ALLEGATIONS AND PROCEDURAL HISTORY

This Court assumes familiarity with the case but will restate relevant facts and procedural history for ease of reference.

### A.  Factual Allegations Set Forth In the Amended Complaint[1]

Defendant Russian Desserts Inc. ("Russian Desserts") is a New York corporation located in Kings County that operates a business in the baking industry.  See ECF No. 15 ¶ 10. Defendant Rafael Ibragimov ("Individual Defendant") is a resident of Kings County and the owner of Russian Desserts.  See id. ¶ 11.  At all relevant times, Defendants had at least two employees and had an annual business exceeding $500,000.  See id. ¶¶ 13, 16.

---

[1] These facts are drawn from Plaintiff's amended complaint and are accepted as true for the purpose of this motion in light of the entry of certificate of default and District Judge Glasser's Order granting default judgment in Plaintiff's favor.  See Sanchez v. Jyp Foods, Inc., 16 Civ. 4472 (JLC), 2018 WL 4502008, at *4 (S.D.N.Y. Sept. 20, 2018) ("Once a default has been established, as is the case here, the Court accepts as true all of the factual allegations in a complaint except the amount of damages.").

Defendants employed Plaintiff as a full-time baker from December 2017 through August 2018.  See id. ¶ 12.  Plaintiff's duties included baking desserts.  See id.  Plaintiff was not responsible for supervising or managing other workers.  See id. ¶¶ 19-23.  Plaintiff's job did not require specialized training.  See id. ¶ 21.  From December 2017 through August 2018, Plaintiff worked six days per week at a minimum of twelve hours per day, totaling at least 72 hours worked per week.  See id. ¶ 17.  Defendants paid Plaintiff at a rate of approximately $400.00 per week.  See id. ¶ 18.  Throughout Plaintiff's employment, Defendants did not post any wage notices and failed to keep adequate time records.  See id. ¶¶ 25, 30.

### B.  The Court Granted Default Judgment In Plaintiff's Favor

Plaintiff timely filed an amended complaint against Defendants.[2]  See ECF No. 15. Plaintiff alleged four claims:

(i)      Failure to pay overtime wages in violation of the FLSA;
(ii)     Failure to pay overtime wages in violation of the NYLL;
(iii)    Failure to pay minimum wages in violation of the NYLL; and
(iv)     Failure to provide accurate wage statements in violation of the NYLL.

See id. ¶¶ 63-78.  Plaintiff requested declaratory judgment, injunctive relief and damages consisting of unpaid wages, liquidated damages and statutory penalties.  See id.  Plaintiff served Defendants with process.  See ECF No. 16.  Defendants failed to answer or otherwise respond to the amended complaint and failed to appear or otherwise participate in the action.  See ECF No. 17.  On his own behalf, Plaintiff requested and obtained a certificate of default against Defendants.  See ECF No. 18.  Plaintiff made a second motion for a default judgment.  See ECF

---

[2] Plaintiff's original complaint was dismissed by the Court on Plaintiff's first motion for default judgment against the defaulting Defendants.  See ECF No. 14.  The Court found that the complaint failed to sufficiently plead enterprise or individual coverage under the FLSA.  See id.  Plaintiff was given leave to amend the complaint to address the deficiency.  See id.

No. 19.  The second motion, for the period between December 1, 2017 and August 31, 2018,

sought $23,744.00 in unpaid overtime wages; $23,744,00 in liquidated damages; $5,000.00 in

statutory penalties[3]; and attorneys' fees and costs.  See id.

The Court granted Plaintiff's motion for default judgment on liability.  See ECF No. 20.

The Court noted that, although the amended complaint asserted collective claims, such claims

were waived because Plaintiff failed to reiterate his request for collective action in his default

judgment motion.  See id. n.1.  The Court also deemed as waived any non-monetary relief sought

in the amended complaint because Plaintiff's motion sought only unpaid minimum and overtime

wages, liquidated damages and statutory penalties.  See id. n.2.  The Court held that Plaintiff's

request for damages required further substantiation due to conflicting damages calculations in

Plaintiff's submissions.  See id.  The matter was referred to the undersigned.  See id.

### C.  Inquest On Damages

This Court issued an Order scheduling a videoconference inquest on Plaintiff's damages,

attorneys' fees and costs.  See Dkt. Scheduling Order 9/16/2020.  Plaintiff and his attorney were

directed to appear and to email the Court a witness list, an exhibit list and a copy of all exhibits

expected to be offered at the inquest.  See id.  Defendants were timely given notice of the inquest

and were invited to attend and participate.  See id.  Plaintiff's counsel submitted a witness list.

Plaintiff's counsel also submitted three exhibits: (i) a chart setting forth a proposed calculation of

damages (Exhibit A); (ii) Plaintiff's counsel's time sheet (Exhibit B); and (iii) a copy of the

retainer agreement between Plaintiff and his counsel (Exhibit C).

---

[3] Although the amended complaint sought statutory damages for failure to provide accurate wage
statements, see ECF No. 15 ¶¶ 74-78, the second motion for default judgment instead sought
statutory damages for failure to give proper notice of wages, see ECF No. 19 ¶ 13.  As discussed
below in Section III.B.5, this Court recommends only awarding statutory damages for failure to
provide accurate wage statements.

This Court held the inquest by videoconference.  See Dkt. Entry 10/27/2020.  Plaintiff

and Mr. Feinerman appeared, but Defendants did not.  See id.  Plaintiff, a native Russian

speaker, required an interpreter to testify.  See ECF No. 22 at 2:11-18.

In support of his claim for damages, Plaintiff testified in response to counsel's questions

as follows:

- Plaintiff was employed by Defendants from December 1, 2017 through the end of August 2018 (see id. at 5:25-6:9);
- Plaintiff's responsibilities were to make desserts, clean, and load and unload supplies (see id. at 6:10-20);
- Plaintiff worked over 72 hours per week (see id. at 6:21-22, 7:15-18);
- Plaintiff was paid $9.00 per hour for every hour worked (see id. at 6:23-7:5); and
- Plaintiff was paid in cash and never received any written pay stubs (see id. at 7:6-14).

This Court also questioned Plaintiff regarding his claim for damages.  In response to this Court's

questions regarding the average number of hours worked per week, Plaintiff testified that he

usually worked seven days per week, about 16 hours per day in December, anywhere from 11 to

14 hours per day in other months, and ten hours per day on some days.  See id. at 8:6-9:19.

Plaintiff's testimony was inconsistent with the allegations in the amended complaint.  In his

amended complaint, Plaintiff had alleged that he only worked six days per week.  See ECF No.

15 ¶ 17.

Plaintiff further testified that he did not take any sick days or any vacation days.  See id.

at 9:16-10:7.  Although Plaintiff described an incident that required him to leave work around

11:00 am one morning, Plaintiff also testified that he returned to work later that day.  See id.

When asked to describe how he was paid, Plaintiff testified that, every Friday afternoon,

he received cash in an envelope in an amount that varied depending on the number of hours he

had worked.  See id. at 7:6-14, 11:22-12:8, 12:17-13:1.  Plaintiff was paid on a one-week

delayed schedule, such that he was paid on Friday afternoon for the previous week's work.  See id. at 10:20-12:4, 12:21-13:1.  Plaintiff testified that he never received any written pay stubs or documents regarding his wages.  See id. at 7:9-14, 11:19-21.  The envelope Plaintiff received with his pay indicated just Plaintiff's name and nothing else.  See id. at 7:6-14, 11:22-12:8.

Although the amended complaint did not include such an allegation, Plaintiff also testified that he was not paid for the last week of his employment with Defendants.  See id. at 11:9-15, 14:8-12.  According to Plaintiff, any time he told the Individual Defendant that he would quit the job, Individual Defendant would threaten to withhold his previous week's pay.  See id. 11:9-15.  When Plaintiff did leave in August, Plaintiff testified that Defendants did not give him his last week's wages.  See id. 11:9-15, 14:8-12.  Plaintiff was uncertain the number of days for which he was not paid for his work.  See id. at 21:15-18.  On the record, Mr. Feinerman moved to amend Plaintiff's claim for damages to include unpaid wages for the last week of his employment to conform to Plaintiff's testimony.  See id. at 20:7-11.

When asked about the total number of individuals employed by Defendants, Plaintiff testified that seven people were employed.  See id. at 13:15-17.  Although Plaintiff contradicted himself at one point by claiming that Defendants employed nine employees with up to six additional employees on weekends, Plaintiff's counsel conceded that Defendants employed fewer than ten employees.  See id. at 17:15-18:16.  Mr. Feinerman admitted that the minimum wage rate for businesses with fewer than 10 employees applied to Plaintiff's calculation of unpaid wages.  See id.

Plaintiff's testimony regarding the exact last date of his employment with Defendants was uncertain.  Although the amended complaint states that Plaintiff was employed by Defendants "until August 2018," see ECF No. 15 ¶ 12, and the motion for default judgment

6

claims that Plaintiff was employed by Defendants "through August 31, 2018," <u>see</u> ECF No. 19 ¶ 11, Plaintiff did not testify that August 31, 2018 was his last day of employment.  <u>See id.</u> at 20:19-22:5.  Plaintiff testified that he did not remember the last day of his employment.  <u>See id.</u> at 20:23-21:21.  Plaintiff was uncertain whether his last day was a Friday or a Saturday.  <u>See id.</u> at 21:2-4. Plaintiff testified that he worked "maybe two and a half weeks, maybe three and a half weeks, maybe it was 20 something, maybe it was towards the end of the month.  I don't remember."  <u>See id.</u> at 22:6-11.

Plaintiff's testimony at the inquest was inconsistent with many of the allegations set forth in the amended complaint.  In the amended complaint, Plaintiff alleged that he worked six days per week at a minimum of 12 hours per day, totaling at least 72 hours worked per week.  <u>See</u> ECF No. 15 ¶ 17.   Yet, at the inquest, Plaintiff's testimony suggested that he worked seven days per week at more than 72 hours per week.  <u>See</u> ECF No. 22 at 7:15-18; 8:4-10:7.  When the Court asked counsel whether Plaintiff's claim for the number of hours worked per week would be increased based on his testimony, Mr. Feinerman responded in the negative and explained that 72 hours was a reasonable estimate of Plaintiff's weekly hours because Plaintiff could not recollect his work schedule with reasonable certainty.  <u>See id.</u> at 15:17-16:4.  In the amended complaint, Plaintiff alleged that he was paid a flat rate of $400 per week for his work.  <u>See</u> ECF No. 15 ¶ 18. Yet, at the inquest, Plaintiff's testimony established that he was paid $9.00 per hour for every hour that he worked and that he was never paid more than that rate.  <u>See</u> ECF No. 22 6:23-7:5. Mr. Feinerman admitted that Plaintiff's claim to damages based on the assumption that Plaintiff was paid $400 per week was erroneous.  <u>See id.</u> at 16:23-18:16.  This Court finds Plaintiff's testimony more credible than the amended complaint because the testimony was given in response to examination by counsel and the Court under oath.  As set forth below, the Court

resolves these inconsistencies in favor of Plaintiff's testimony to the extent Plaintiff does not

seek damages greater than what was alleged in the amended complaint.

This Court questioned Plaintiff and Mr. Feinerman regarding the claim for attorneys' fees

and costs.  Plaintiff testified that he entered into a retainer agreement with his counsel and that he

was satisfied with the legal work performed by his counsel.  See id. at 14:13-15:6.  Mr. Feinerman

submitted a time sheet (Exhibit B) showing the dates and amount of time during which services

were rendered, the hourly rate at which services were charged, and the type of services rendered.

Mr. Feinerman testified that the time sheet accurately reflected the work he has done in this case,

exclusive of his attendance at the inquest.  See id. at 22:16-22.  Mr. Feinerman testified that his

regular hourly rate is $350.00 per hour.  See id. at 23:3-6.  He practiced law for over 30 years in a

wide range of cases and practiced labor law for five to six years, handling approximately a dozen

cases.  See id. at 23:7-23.  When this Court asked Plaintiff and Mr. Feinerman whether any other

evidence should be included in the record, they answered in the negative.  See id. at 22:12-15,

24:15-19.

This Court gave Plaintiff leave to submit an amended proposed calculation of damages.

See id. at 23:24-24:14.  Mr. Feinerman timely submitted to this Court an amended Exhibit A of a

proposed calculation of damages to reflect the proper minimum hourly wage for a small

employer.  Mr. Feinerman also submitted an amended Exhibit B of counsel's time sheet, which

was updated to include an additional two hours for counsel's time at the inquest.

Mr. Feinerman did not move into evidence any of the exhibits relied upon for Plaintiff's

claim for damages.  This Court permitted Mr. Feinerman to make a motion to supplement the

record.  See Dkt. Status Report Order 12/28/2020.  Mr. Feinerman filed a motion to amend,

correct or supplement record.[4]  See ECF No. 23.  The motion included a sworn declaration by

Mr. Feinerman attaching the same three amended exhibits submitted to this Court after the

inquest: (i) a chart setting forth a proposed calculation of damages (Exhibit A); (ii) Plaintiff's

counsel's time sheet (Exhibit B); and (iii) a copy of the retainer agreement between Plaintiff and

Mr. Feinerman's office (Exhibit C).  See id.  Mr. Feinerman attested that he personally

performed all of the services listed in the time sheet (Exhibit B) and noted his time concurrently

with the services performed.  See id. ¶ 11. Mr. Feinerman also attested that the retainer

agreement (Exhibit C) was prepared by his office and was signed by Plaintiff in his presence.

See id. ¶ 12.  Mr. Feinerman argued that the damages chart (Exhibit A) should be admitted into

evidence as demonstrative evidence, to guide the court in calculating Plaintiff's damages.  See

ECF No. 24 at 2.  This Court granted in part and denied in part Plaintiff's motion to amend,

correct or supplement the record.  See Dkt. Order 2/1/2021.   Plaintiff's request to move Exhibits

B and C into evidence was granted on the basis that Mr. Feinerman had properly laid the

foundation for such documents during the inquest and that no prejudice to Defendants arose from

submitting those exhibits into evidence.  See id.  Plaintiff's request to move Exhibit A into

evidence was denied on the basis that the chart, as a demonstrative exhibit, was not an accurate

or reliable calculation of damages.  See id.

---

[4] Although Plaintiff's motion was brought pursuant to Federal Rule of Civil Procedure 59(a)(2), this Court questions the applicability of that Rule in this instance where no judgment has yet been entered and no new trial is required.  See, e.g., Fed. R. Civ. P. 59(a)(2) ("After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."); Baasch v. Reyer, 827 F. Supp 940, 942-43 (E.D.N.Y. 1993) (noting that there are three grounds for granting new trials under Rule 59(a)(2): "(1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence") (citing Brown v. Wright, 588 F.2d 708, 710 (9th Cir. 1978)).

## II.      PROPOSED FINDINGS OF FACT

This Court proposes the following findings of fact pursuant to Federal Rule of Civil Procedure 52.  These findings are drawn from witnesses' testimony at the inquest and the exhibits submitted by Mr. Feinerman.  In general, having considered the pleadings, the testimony and the evidence, the Court found Plaintiff's testimony to be credible, with certain exceptions noted below.

1.      Plaintiff was employed by Defendants from December 1, 2017 through August 18, 2018.  Plaintiff testified that he began working for Defendants on December 1, 2017, see ECF No. 22 at 6:3-6, which was consistent with the allegation in his amended complaint and his affidavit in support of the motion for a default judgment, see ECF No. 15 ¶ 12; ECF  No. 19 ¶ 11.  Yet, Plaintiff could not identify the exact last date of his employment.  See ECF No. 22 at 20:19-22:11.  Plaintiff testified that he may have worked anywhere from two and a half weeks to three and a half weeks, but did not testify that August 31, 2018 was his last day.  See id. Crediting Plaintiff's testimony that he worked at least two and a half weeks in August, but not giving weight to vague, self-serving testimony that he may have worked a longer period, this Court believes that setting August 18, 2018 as Plaintiff's last date of employment with Defendants is consistent with the evidence.

2.      Throughout his employment with Defendants, Plaintiff did not take time off. Although Plaintiff testified that an incident required him to leave work one morning, he stated that he returned to work later that day.  See id. at 9:16-10:7.  This Court also finds Plaintiff's testimony that he did not take any sick days or any vacation days to be credible in light of the short employment period.  See id.

3.      Plaintiff proved that he worked 72 hours per week.  In the amended complaint, Plaintiff alleged that he worked six days per week at a minimum of 12 hours per day, totaling at least 72 hours worked per week.  See ECF No. 15 ¶ 17.   Yet, at the inquest, Plaintiff testified that he worked seven days per week, anywhere from 10 to 16 hours per day.  See ECF No. 22 at 7:15-18; 8:4-10:7.  Mr. Feinerman argued that 72 hours was a reasonable estimate of Plaintiff's weekly hours because Plaintiff could not recollect his work schedule with reasonable certainty. See id. at 15:17-16:4.  Plaintiff conceded that 72 hours per week was the reasonable weekly average of the number of hours worked.  See id. 8:23-9:19; 16:7-9.  In light of this concession, this Court finds the testimony at the inquest to be more credible than the allegations in the amended complaint as to this point.

4.      Plaintiff testified that he was paid $9.00 per hour for every hour that he worked and that he was never paid more than that rate.  See id. 6:23-7:5.  In the amended complaint, Plaintiff alleged that he was paid a flat rate of $400 per week for his work.  See ECF No. 15 ¶ 18. Mr. Feinerman admitted that Plaintiff's claim to damages based on the assumption that Plaintiff was paid $400 per week was erroneous.  See id. at 16:23-18:16.  Again, with this concession, this Court finds the testimony at the inquest to be more credible than the allegations in the amended complaint.

5.      Defendants were small New York City employers employing seven employees, including Plaintiff.  At the inquest, Plaintiff testified that seven people were employed by Defendants.  See id. 13:15-17.  Plaintiff tried to alter his testimony to claim that Defendants employed nine employees with up to six additional employees on weekends.  See id. at 17:15-18:16.  This Court finds that testimony to be not credible because it came after this Court pointed out that Plaintiff would be entitled to less wages per hour if Defendants were a business with ten

or fewer employees.  See id. 17:6-18:14.  In any event, Plaintiff's counsel conceded that Defendants employed fewer than ten employees.  See id. at 17:15-18:16.

6.     Defendants failed to furnish Plaintiff with a wage statement with every wage payment.  Plaintiff testified that he never received any written pay stubs or documents regarding his wages.  See ECF No. 22 at 7:9-14, 11:19-21.  According to Plaintiff, he was paid in cash by Defendants in an envelope that only had Plaintiff's name on the outside.  See id. at 7:6-14, 11:22-12:8.

7.     Defendants failed to furnish Plaintiff with a wage notice.  At the inquest, Plaintiff testified that he did not receive any paperwork when he was hired by Defendants or any written indication of his salary or hourly rate.  See ECF No. 22 at 11:16-21.

8.     Mr. Feinerman's regular hourly rate is $350.00 per hour.  See id. at 23:3-6.  He stated that he has practiced law for over 30 years in a wide range of cases and practiced labor law for five to six years, handling approximately a dozen cases representing both plaintiffs and defendants.  See id. at 23:7-23.

9.     Mr. Feinerman expended 18.6 hours working on this case.  See ECF No. 23-3. Such hours include hours for duplicative work and for clerical tasks that should have been performed by administrative staff.

10.     Plaintiff paid the electronic filing fee of $400.00.  See Dkt. Entry12/26/2018 ("COMPLAINT against All Defendants filing fee $ 400, receipt number ANYEDC-11054605[.]").

### III.    DISCUSSION

### A.    Plaintiff's Motion To Amend Operative Complaint To Include Claim For Unpaid Wages

At the inquest, Plaintiff raised a new claim for unpaid wages for his final week of work in August 2018.  See ECF No. 22 at 10:20-11:15, 14:8-12.  Plaintiff's counsel made an oral application to amend Plaintiff's amended complaint to include a claim for unpaid wages.  See id. at 19:19-20:11.  This Court respectfully recommends that Plaintiff's application be denied.

This Court first considers whether it would appropriate to award Plaintiff damages for a claim that was not alleged in his complaint or amended complaint.  Federal Rule of Civil Procedure 54(c) provides, in relevant part: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  As such, courts have refused to grant any relief on default judgment that was not specifically alleged or requested in the operative pleading.  See, e.g., Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101 (11th Cir. 2015) (finding that defaulting defendants, by default judgment, cannot be held liable for a claim that was not alleged in the complaint); Silge v. Merz, 510 F.3d 157, 160-161 (2d Cir. 2007) (affirming the denial of pre-judgment interest in connection with the entry of default judgment where plaintiff did not expressly seek statutory pre-judgment interest in the prayer in his complaint)); Master Grp. Glob. Co. v. Toner.Com Inc., No. 19 Civ. 6648 (AMD) (RLM), 2020 WL 5260581, at *12 (E.D.N.Y. Aug. 10, 2020) (declining to find that defaulting defendant had sufficient notice of plaintiff's intent to recover pre-judgment interest where plaintiff's allegations requested unspecified form of "interest"); LG Elecs., Inc. v. Advance Creative Comput. Corp., 212 F. Supp. 2d 1171, 1176 (N.D. Cal. 2002) (holding that issuing default judgment declaring that patents are enforceable valid would violate Rule 54(c) where the complaint only sought injunction); Marina B Creation S.A. v. de Maurier, 685 F. Supp. 910, 912-

13

13 (S.D.N.Y. 1988) (refusing to increase plaintiff's damages for patent infringement where complaint made no demand for treble damages and the motion for default contained no notice of increase).  The theory behind this rule is that "the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action."  10 Charles Alan Wright et al., Federal Prac. & Proc. § 2663 (4th ed. 2014) (citations omitted).  As such, "unless all the parties in interest have appeared and voluntarily litigated an issue not within the pleadings, the court should consider only those issues presented in the pleadings."  See id.

The amended complaint and motion for a default judgment failed to include any factual allegations or demand for relief relating to the contention that Defendants failed to pay Plaintiff for his final week of work in August 2018.  In the amended complaint, Plaintiff only alleged that Defendants (i) failed to pay the mandatory minimum wage rate or compensate Plaintiff for his overtime hours; (ii) failed to keep adequate records; and (iii) failed to issue wage statements. See, e.g., ECF No. 15 ¶¶ 18, 25-27, 30, 32.  There was no allegation in the amended complaint that Defendants withheld any payment for Plaintiff's work.  See generally ECF No. 15.  Under Plaintiff's three claims for relief, Plaintiff only demanded payment of unpaid minimum and overtime wages, liquidated damages, statutory damages, attorneys' fees and costs.  See id. ¶¶ 67, 73, 78.  Plaintiff's ad damnum clause failed to specify any category of damages.  See ECF No. 1 at 16 ¶ K; ECF No. 15 at 15 ¶ K.  Plaintiff's motion for default judgment did not add any new factual allegations or demand for damages.  See ECF No. 19.

Nothing in the amended complaint or motion may be construed as putting Defendants on notice that Plaintiff was seeking damages for unpaid wages.  Plaintiff alleged that "Plaintiff . . . [was] not paid for all hours worked," but that allegation was made in the context of Plaintiff's

14

"rest and meal periods."  See id. ¶ 28.  That allegation cannot be construed as an allegation for

unpaid wages, as the two claims are analyzed differently and would have different effects on a

defendant who would analyze the allegations to assess his possible exposure in the event of

default.  Compare N.Y. Lab. Law § 162 (specifying mandatory meal periods for employees

working more than six hours within specified time periods) and Xin Long Lin v. New Fresca

Tortillas, Inc., No. 18 Civ. 3246 (RJD) (RER), 2019 WL 3716199, at *6 (May 1, 2019) (holding

that plaintiff's claim for failure to provide meal periods fails because there is no private right of

action under NYLL § 162), R&R adopted, 2019 WL3714600 (E.D.N.Y. May 28, 2019) with

N.Y. Lab. Law § 191(1)(d) (mandating that workers who are not manual workers, railroad

workers or commission salesmen be "paid the wages earned in accordance with the agreed terms

of employment, but not less frequently than semi-monthly, on regular pay days designated in

advance by the employer") and Vega v. K & C Interior Constr. Corp., No. 18 Civ. 182 (RER),

2018 WL 4376486, at *6 (Aug. 28, 2018) (awarding damages in favor of employee who was

owed four weeks of wages), R&R adopted, 2018 WL 4373911 (E.D.N.Y. Sept. 13, 2018).

Plaintiff's request for "such other and further relief as the Court deems just and proper" was also

insufficient to put Defendants on notice of a demand for unpaid wages.  See, e.g., Silge, 510 F.3d

at 160 (finding that the formulaic, boilerplate language of "such other and further relief which

this Court deems just and proper . . . cannot substitute for the meaningful notice called for by

Rule 54(b)"); Fox v. Bd. of Trs. of State Univ. of N.Y., 42 F.3d 135, 141–42 (2d Cir. 1994)

(declining "to read a damages claim into the [c]omplaint's boilerplate prayer for 'such other

relief as the [c]ourt deems just and proper'" or to conclude that the court should have permitted

amendment of the pleading to seek such a claim).

Awarding Plaintiff damages for unpaid wages would be a violation of Rule 54(c) because such claim for damages was not raised in the amended complaint or the motion for a default judgment, and Defendants were never on notice that Plaintiff would be seeking such damages.

With this in mind, this Court next considers Plaintiff's request to amend the pleading under Rule 15(b) to include a new claim for unpaid wages.  Federal Rule of Civil Procedure 15(b) provides, in relevant part: "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."  Fed. R. Civ. P. 15(b)(2).  In determining whether to allow an amendment pursuant to Rule 15(b), courts should consider: "whether the new issues were tried by the parties' express or implied consent and whether the defendant would be prejudiced by the implied amendment, i.e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory."  United States v. Certain Real Prop. & Premises, Known as 890 Noyac Rd., Noyac, N.Y., 945 F.2d 1252, 1257 (2d Cir. 1991) (citation & internal quotation marks omitted).

This Court finds that Defendants did not and could not consent to trying any new issues. "Express consent may be given by stipulation, or may be incorporated in a pretrial order[.] Implied consent . . . depends on whether the parties recognized that an issue not presented by the pleadings entered the case at trial.  If they do not, there is no consent and the amendment cannot be allowed."  6A Arthur R. Miller et al., Federal Prac. & Proc. § 1493 (3d ed. 2008) (citations omitted).  The Second Circuit has cautioned against inferring implied consent "particularly in light of the notice demands of procedural due process."  Grand Light & Supply Co. v. Honeywell, Inc., 771 F.2d 672, 681 (2d Cir. 1985) (citations & internal quotation marks

omitted).  Having defaulted in this case and failed to appear at the inquest, Defendants could not

have stipulated to try new issues, objected at the inquest to the introduction of Plaintiff's

testimony regarding Defendants' failure to pay wages for his final week of work, or recognized

that a new issue was being presented at the inquest.  As discussed above, Defendants were not on

notice, by pleading or notice of motion, that Plaintiff would be seeking unpaid wages for

Plaintiff's last weeks of work in August 2018.  As such, Defendants never had the fair

opportunity to consider the new claim, to defend against it, or to even decide to default on it.

These circumstances implicate procedural due process concerns that the Second Circuit

cautioned against, and this Court finds no countervailing reasons for finding that amendment

would be appropriate in this case.

Accordingly, this Court respectfully recommends that Plaintiff's application to amend the

amended complaint be denied.

### B.  Plaintiff's Motion For Damages

Once liability is established as to a defaulting defendant, the court must "determine the

appropriate amount of damages, which involves two tasks: determining the proper rule for

calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages

to be determined under this rule."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151,

155 (2d Cir. 1999); see Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155,

158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well

pleaded allegations of liability, it is not considered an admission of damages.").  "Where a

defaulting defendant has not made any submission on a damages inquest, the Court must assess

whether the plaintiff has provided a sufficient basis for the Court to determine damages."  Lenard

v. Design Studio, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012); see Transatlantic Marine Claims

Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (noting that the court should "take the necessary steps to establish damages with reasonable certainty"); see Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989) (holding that detailed affidavits, documentary evidence, and judge's personal knowledge of the record provided sufficient basis for calculating damages). "The court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages[.]" Fed. R. Civ. P. 55(b)(2). "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages, even though liability has been established through default." Lenard, 889 F. Supp. 2d at 527.

An employee bringing an action for unpaid wages has the burden of proving that he performed work for which he was not properly compensated. See, e.g., Guardado v. 13 Wall St., Inc., No. 15 Civ. 2482 (DRH) (SIL), 2016 WL 7480358, at *6 (Dec. 2, 2016) (discussing employee's burden of proof for unpaid wages claim), R&R adopted, 2016 WL 7480363 (E.D.N.Y. Dec. 29, 2016); see Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 497-98 (S.D.N.Y. 2017), aff'd, 752 F. App'x 33 (2d Cir. Oct. 18, 2018) (discussing the shifting burden of proof to establish claims and damages under the FLSA and the NYLL). On default by defendants, the courts accept as true a plaintiff's own recollection, statements of wages earned, and estimates of hours worked. See, e.g., Piedra v. Ecua Rest., Inc., No. 17 Civ. 3316 (PKC) (CLP), 2018 WL 1136039, at *12 (Jan. 31, 2018) (discussing the presumption of correctness to a plaintiff's recollection of wages earned on defendant-employer's default), R&R adopted, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018).

### 1.  Damages For Defendants' Failure To Pay Minimum Wages

Both federal and New York state laws mandate employers pay their employees a minimum wage for the first 40 hours that employees work each week.  <u>See</u> 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652(1).  For all times relevant to this litigation, Plaintiff was entitled to the federal minimum hourly wage of $7.25.  <u>See</u> 29 U.S.C. § 206(a)(1)(C) (mandating a minimum wage of $7.25 an hour as of July 24, 2009).   Under the NYLL, for small employers employing ten or fewer employees, the applicable minimum hourly wage rates for the time periods at issue in this matter were as follows: (i) $10.50 on and after December 31, 2016, and (ii) $12.00 on and after December 31, 2017.  See N.Y. Lab. Law § 652(1)(a)(ii).[5]

Here, Plaintiff was paid an hourly rate higher than the minimum wage under the FLSA. <u>See</u> 29 U.S.C. § 206(a)(1)(C).  Therefore, Plaintiff does not have a claim against Defendants for damages for failure to pay minimum wages under the FLSA.

On the other hand, the record adequately establishes that Defendants failed to pay Plaintiff the mandatory minimum wage under the NYLL.  Plaintiff was employed by Defendants to, <u>inter alia</u>, make desserts.  <u>See</u> ECF No. 22 at 6:10-20.  Although the amended complaint alleged that Plaintiff was paid a flat rate of approximately $400.00 per week,[6] <u>see</u> ECF No. 15 ¶

---

[5] For large employers employing 11 or more employees, the applicable minimum hourly wage rates for the time periods at issue in this matter were as follows: (i) $11.00 per hour on and after December 31, 2016; and (ii) $13.00 on and after December 31, 2017.  <u>See id.</u> § 652(1)(a)(i).

[6] Under New York regulations, the "regular rate of pay" for employees in the hospitality industry is calculated by dividing the employees' weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.  <u>See</u> 12 N.Y.C.R.R. § 146-3.5.  The hospitality industry includes any restaurant or hotel.  12 N.Y.C.R.R. § 146-3.1(a).  Bakeries have been recognized to be included in the hospitality industry.  <u>See, e.g.</u>, <u>Quiroz v. Luigi's Dolceria, Inc.</u>, No. 14 Civ. 871 (VVP), 2016 WL 2869780, at *3-4 (E.D.N.Y. May 17, 2016) (applying regulations promulgated for the hospitality industry to plaintiff's FLSA and NYLL claims against defendant bakery); <u>Lopez v. Yossi's Heimishe Bakery, Inc.</u>, No. 13 Civ. 5050 (FB) (CLP), 2015 WL 1469619, at *9 (E.D.N.Y.

18, Plaintiff clarified at the inquest that instead he was paid an hourly rate of $9.00 for every

hour worked, <u>see</u> ECF No. 22 at 6:23-7:5.  Throughout the course of Plaintiff's employment with

Defendants, the minimum wage under New York state law was greater than $9.00 per hour.  <u>See</u>

N.Y. Lab. Law § 652(1)(a).  Hence, Plaintiff established that he performed work for which he

was not properly compensated under the NYLL.

The record also establishes that Defendants, at all relevant times, were small New York

City employers for purposes of determining the applicable minimum hourly wage rates.  The

amended complaint alleged that Russian Desserts was located in Kings County and had at least

two employees.  <u>See</u> ECF No. 15 ¶¶ 10, 13.  At the inquest, Plaintiff testified that seven people

were employed by Defendants.  <u>See</u> ECF No. 22 at 13:15-17.  Although Plaintiff contradicted

himself at one point by claiming that Defendants employed nine employees with up to six

additional employees on weekends, Plaintiff's counsel conceded that Defendants were small

employers under the NYLL.  <u>See id.</u> at 17:15-18:16.  As small employers, Defendants were

required to pay minimum hourly wage rates of $10.50 on and after December 31, 2016, and

$12.00 on and after December 31, 2017.  <u>See</u> N.Y. Lab. Law § 652(1)(a)(ii).

The record also proves that Plaintiff was employed by Defendants from December 1,

2017 through August 18, 2018.  Plaintiff's testimony at the inquest that he began working for

Defendants on December 1, 2017, <u>see</u> ECF No. 22 at 6:3-6, was consistent with the allegations in

his amended complaint, <u>see</u> ECF No. 15 ¶ 12, and his affidavit in support of motion for default

judgment, <u>see</u> ECF No. 19 ¶ 11.  Plaintiff alleged and credibly testified that he worked through

Mar. 30, 2015). Thus, at $400.00 per week, Plaintiff's rate of pay would have been $10.00 per
hour, which would have been raised up to the minimum wage.

the month of August 2018.[7]  Giving Plaintiff's recollection due weight, setting the last date of

employment with Defendants as August 18, 2018 is reasonable.  See ECF No. 22 at 22:6-11.

Using the applicable minimum wage rates and Plaintiff's period of employment, this

Court finds that Plaintiff is owed $4,200.00 in unpaid minimum wages.  From December 1, 2017

through December 30, 2017, Plaintiff was paid at an hourly rate of $9.00 even though the

applicable minimum wage for this time period was $10.50 per hour.  See N.Y. Lab. Law §

652(1)(a)(ii).  A comparison for Plaintiff's first 40 hours per week between Plaintiff's actual pay

and the statutory minimum wage reveals an underpayment of $60.00 per week for four weeks,

for a total underpayment during this period of $240.00 ($1.50 x 40 x 4).  From December 31,

2017 through August 18, 2018, Plaintiff continued to be paid at an hourly rate of $9.00 even

though the applicable minimum wage for this time period was $12.00 per hour.  See N.Y. Lab.

Law § 652(1)(a)(ii).  Defendants underpaid Plaintiff by $120.00 per week for 33 weeks, for a

total underpayment during this period of $3,960.00 ($3.00 x 40 x 33).

Accordingly, the Court respectfully recommends that Plaintiff be awarded a total of

$4,200.00 ($240.00 + $3,960.00) in compensatory damages for Defendants' minimum wage

violations under the NYLL.

## 2.  Damages For Defendants' Failure To Pay Overtime Wages

The FLSA and the NYLL require that employers pay employees at least a 50 percent

premium on any hours worked in excess of 40 per week.  See 29 U.S.C. § 207(a)(1); N.Y. Comp.

Codes R. & Regs. Tit. 12, § 146-1.4; Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,

---

[7] By defaulting, Defendants cannot contradict Plaintiff's testimony.  See Rivera v. Ndola Pharmacy
Corp., 497 F. Supp. 2d 381, 389 (E.D.N.Y. 2007) ("[P]laintiff's estimates may constitute sufficient
evidence and the employer cannot be heard to complain that the damages lack the exactness and
precision of measurement that would be possible had he kept records.") (citation & internal
quotation marks omitted).

723 F.3d 192, 200 (2d Cir. 2013) (noting that the FLSA and NYLL mandates overtime compensation at a rate of no less than one and one-half times the regular rate of pay for hours worked in excess of 40 per week); Copper v. Cavalry Staffing, LLC, 132 F. Supp. 3d 460, 465 n.2 (E.D.N.Y. 2015) ("Overtime claims under the FLSA and NYLL are subject to the same standards.") (citing Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 89 n.5 (2d Cir. 2013)). Under the FLSA, Plaintiff would have been entitled to overtime wages of $10.88 per hour for every hour worked in excess of 40 hours per week.  See 29 U.S.C. § 206(a)(1)(C).  Under the NYLL, for his overtime hours, Plaintiff would have been entitled to $15.75 per hour on and after December 31, 2016, and $18.00 per hour on and after December 31, 2017.  See N.Y. Lab. Law § 652(1)(a)(ii).  Because the NYLL provides a higher overtime wage rate throughout Plaintiff's employment, this Court will apply the rates prescribed under the NYLL as the applicable wage.[8]

Here, Plaintiff established that Defendants failed to pay the mandatory overtime wage rate under the NYLL.  Plaintiff testified that he was paid $9.00 per hour for every hour that he worked and that he was never paid more than that rate.  See id. 6:23-7:5.

Plaintiff has also demonstrated that he worked more than 40 hours each week without exception.  Plaintiff testified that he worked seven days per week, sometimes ten hours per day and up to 16 hours on others, such that 72 hours per week was the reasonable regular number of hours worked per week.  See id. 8:23-9:19; 16:7-9.  In light of Plaintiff's credible testimony that

---

[8] An employee "may not receive a 'double recovery' of back wages under both the FLSA and [the] NYLL."  Hernandez v. Jrpac Inc., No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (quoting Gen. Tel. Co. of the Nw. v. E.E.O.C., 446 U.S. 318, 333 (1980)).  If "a plaintiff is entitled to damages under both federal and state wage law, the [c]ourt has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief."  Sun v. China 1221, Inc., No. 12 Civ. 7135 (RJS), 2016 WL 3248493, at *2 (S.D.N.Y. Apr. 19, 2016) (citation & internal quotation marks omitted).

he worked over 40 hours per week, Plaintiff should have been paid at a rate of 150% of the applicable minimum wage for the overtime hours he worked each week.

Crediting Plaintiff's testimony that he worked 72 hours per week, this Court finds that Plaintiff is owed $10,368.00 in unpaid overtime wages.  From December 1, 2017 through December 30, 2017, Plaintiff was paid $9.00 straight time per hour for each of his 32 overtime hours even though he should have been compensated at a rate of one and one half times $10.50 per hour ($15.75), the applicable minimum wage for this time period.  See N.Y. Lab. Law § 652(1)(a)(ii).  A comparison between Plaintiff's actual pay and the overtime wage rate reveals an underpayment of $216.00 per week for four weeks, for a total underpayment during this period of $864.00 ($6.75 x 32 x 4).  From December 31, 2017 through August 18, 2018, Plaintiff continued to be paid $9.00 per hour for his overtime hours even though he should have been compensated at a rate of one and one-half times $12.00 per hour ($18.00), the increased applicable minimum wage for this time period.  See N.Y. Lab. Law § 652(1)(a)(ii).  As a result, Defendants underpaid Plaintiff at $288.00 per week for 33 weeks, for a total underpayment during this period of $9,504.00 ($9.00 x 32 x 33).

Accordingly, the Court respectfully recommends that Plaintiff be awarded a total of $10,368.00 ($864.00 + $9,504.00) in compensatory damages for Defendants' overtime wage violations under the NYLL.

### 3.  Waived Damages For Defendants' Failure To Pay Spread-of-Hours Wages

The NYLL requires employers to pay employees an additional hour of pay at the minimum wage rate for each day on which the employee worked more than ten hours.  See N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.6.  In his amended complaint, Plaintiff alleged that Defendants failed to pay him spread-of-hours wages as required by the law.  See ECF No. 15 ¶

32.  Plaintiff also claimed that he regularly worked more than ten hours per day and was paid only $9.00 per hour, which was less than the applicable minimum wage throughout his employment with Defendants.  See ECF No. 15 ¶ 17; ECF No. 22 at 6:21-7:18, 8:23-9:19.

In his motion for default judgment, Plaintiff did not seek damages relating to or arising from Defendants' failure to pay spread-of-hours wages.  See ECF No. 19 (seeking damages for unpaid minimum and overtime wages, liquidated damages and statutory damages plus attorneys' fees and costs).  In his proposed calculation of damages, Plaintiff also did not include any damages for unpaid spread-of-hours wages.  See ECF No. 23-2.

Just as District Judge Glasser found that Plaintiff waived any claim for damages not sought in the motion for default judgment, see ECF No. 20 n.2, this Court likewise respectfully recommends finding that Plaintiff waived his right to recover damages for spread of hours. "Waiver requires the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable.  Waiver may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." Tom Rice Buick-Pontiac v. Gen. Motors Corp., 551 F.3d 149, 157 (2d Cir. 2008).  Here, Plaintiff knew of his potential claim for spread-of-hours wages under the NYLL and asserted such right in his complaint and amended complaint.  See ECF No. 1 ¶ 27; ECF No. 15 ¶ 32.  He did not assert his claim to damages arising from Defendants' failure to pay spread-of-hours wages in his motion for default judgment.  See generally ECF No. 19.  As such, Plaintiff waived his claim for spread-of-hours wages.

This Court respectfully recommends finding that Plaintiff is not entitled to any spread-of-hours damages.

### 4.   Liquidated Damages For Defendants' Violations Under The NYLL

Both federal and state law provide for an additional award of liquidated damages to a plaintiff who establishes that his employer failed to pay required wages.  See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."); N.Y. Lab. Law § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover . . . an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due[.]").  Under the FLSA, a court may deny the award of liquidated damages if the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith[.]"  29 U.S.C. § 260.  Under the NYLL, the employer is liable for liquidated damages unless they can demonstrate that they acted in good faith.  See N.Y. Lab. Law § 198(1-a).

Plaintiff sufficiently alleged in his amended complaint that Defendants' failure to pay minimum and overtime wages was "intentional and without a good faith basis."  See ECF No. 15 ¶¶ 41, 49.  A defaulting defendant cannot meet the burden of showing good faith.  See, e.g., Lopic, 2017 WL 10845064, at *8 ("[B]y defaulting, defendant failed to show his good faith, and neither plaintiff's complaint nor his declaration provide evidence of defendant's good faith effort to comply with the FLSA"); Jaramillo v. Banana King Rest. Corp., No. 12 Civ. 5649 (NGG) (RML), 2014 WL 2993450, at *5 (awarding plaintiff liquidated damages where defaulting defendants did not carry their burden of proving good faith to avoid liability for liquidated damages).  Therefore, this Court finds that Plaintiff is entitled to liquidated damages.

Plaintiff requested liquidated damages under both the FLSA and the NYLL in his amended complaint, but Plaintiff's motion for default judgment, without specifying which law applies, properly only included a claim for one additional amount of liquidated damages equal to the total amount of alleged wages due.  Compare ECF No. 15 ¶¶ 67, 73, with ECF No. 19 at 3 ¶ 12.  The Second Circuit has interpreted "the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct," on the basis that such statutory liquidated damages provisions had "no meaningful differences."  Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).  Given that Plaintiff may be awarded only one set of liquidated damages on his claim for unpaid wages, this Court respectfully recommends awarding Plaintiff liquidated damages under the NYLL, which would provide the greatest relief.  See, e.g., id. (vacating liquidated damages award under the FLSA in favor of liquidated damages award under the NYLL because "plaintiff should receive the larger of the two liquidated damages awards"); Lopic, 2017 WL 10845064, at *9 (awarding plaintiff liquidated damages award under NYLL because it provides greatest amount of relief).

Under the NYLL, Plaintiff has demonstrated that he is entitled to $4,200.00 in unpaid minimum wages and $10,368.00 in unpaid overtime wages.  Plaintiff is entitled to the same amount in NYLL liquidated damages.  Therefore, this Court respectfully recommends that Plaintiff be awarded $14,568.00 in liquidated damages.

### 5.  Statutory Damages For Defendants' Failure To Provide Wage Statements Under The NYLL

Plaintiff seeks $5,000.00 in statutory damages.  In the amended complaint, Plaintiff asserted a claim for statutory damages on the basis that Defendants failed to provide accurate wage statements.  See ECF No. 15 ¶¶ 74-78.  Then, in the second motion for default judgment, Plaintiff changed his theory of entitlement to statutory damages.  He argued for statutory

damages on the basis that Defendants failed to provide proper wage notices.  See ECF No. 19 at

3 ¶ 13.

The analysis for statutory damages for failure to provide wage statements is different

from the analysis for statutory damages for failure to provide proper wage notices.  Section

198(1-b) of the NYLL provides that, if an employee is not provided with the wage notice as

required by Section 195(1)[9] within ten days of his or her date of hire, the employee is entitled to

recover damages of $50.00 for each workday the violation occurs, up to a statutory maximum of

$5,000.00.  See id. § 198(1-b); see also Zokirzoda v. Acri Café Inc., No. 18 Civ. 11630 (JPO),

2020 WL 359908, at *6 (S.D.N.Y. Jan. 22, 2020) (awarding plaintiffs statutory damages of fifty

dollars per workday on which they did not receive wage notice).  On the other hand, Section

198(1-d) of the NYLL provides that, if an employer does not provide wage statements

complying with Section 195(3),[10] the employee may recover statutory damages of $250.00 for

each workday the violation occurs, up to a statutory maximum of $5,000.00.  See id. N.Y. Lab.

L. § 198(1-d); see also Piedra, 2018 WL 1136039, at *15 (awarding plaintiff $5,000.00 for

violations of Section 195(3) where plaintiff worked more than 20 workdays after his first pay

period without receiving a wage statement).

Plaintiff established that Defendants violated the wage-notice requirement and the wage-

statement requirement.  At the inquest, Plaintiff testified that he did not receive any paperwork

---

[9] Section 195(1) of the NYLL requires employers to "provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice" that contains information such as the rate of pay, allowances claimed as part of the minimum wage, and the regular pay day.  N.Y. Lab. Law § 195(1)(a).

[10] Section 195(3) of the NYLL requires employers to provide employees with paystubs on each pay day that provide information regarding the employer, the pay period, gross and net wages, deductions, and allowances claimed as part of the minimum wage.  See N.Y. Lab. Law § 195(3).

when he was hired by Defendants or ever receive any written indication of his salary or hourly rate.  See ECF No. 22 at 11:16-21.  Given that Defendants never provided Plaintiff any notice as required under Section 195(1) of the NYLL, and because Plaintiff's length of employment exceeded 100 days, he is entitled to the statutory maximum of $5,000.00 for Defendant's wage-notice violation.  Plaintiff also testified that he did not ever receive any written pay stubs or documents regarding his wages, but only received an envelope with his name on the outside.  See ECF No. 22 at 7:6-14, 11:19-12:8.  Given that Defendants never provided Plaintiff wage statements for any pay period and Plaintiff worked more than 20 days after his first pay period without receiving a wage statement, Plaintiff is entitled to the statutory maximum of $5,000.00 for Defendant's wage-statement violation.

Although the undisputed facts established on the record support a reward of $10,000.00 of statutory damages in favor of Plaintiff for Defendants' failure to provide both wage notices and wage statements under the New York Labor Law, this Court finds that Plaintiff is only entitled to a maximum of $5,000.00 in statutory damages.  As discussed above in Section III.A, a default judgment cannot differ from or exceed the amount of what was demanded in the pleadings.  See Fed. R. Civ. P. 54(c).  Because Plaintiff failed to request statutory damages for failure to provide notice in his amended complaint and again failed to increase his demand for statutory damages in his motion for default judgment, this Court finds that the statutory damages reward to Plaintiff must be limited to $5,000.00.

Therefore, this Court respectfully recommends that Plaintiff be awarded $5,000.00 in statutory damages for Defendant's failure to provide wage statements.

### 6.  Prejudgment Interest On Plaintiff's Damages

Plaintiff requested an award of prejudgment interest in his amended complaint, see ECF No. 1 at 16 ¶¶ C, G, but Plaintiff did not renew his request in his motion for default judgment, see generally ECF No. 19.  This Court deems the request for prejudgment interest to be waived. See Tom Rice Buick-Pontiac, 551 F.3d at 157 ("Waiver may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage."); Reyes v. Art Tek Design, Ltd., No. 16 Civ. 5168 (ADS) (AYS), 2018 WL 614980, at *10 (E.D.N.Y. Jan. 11, 2018) (deeming plaintiff's request for prejudgment interest "abandoned" where plaintiff did not renew his request in the motion for default judgment).  Thus, this Court respectfully recommends not awarding Plaintiff prejudgment interest.

### C.  Plaintiff's Motion For Attorneys' Fees And Costs

Under the FLSA and NYLL, a prevailing plaintiff is entitled to an award of "reasonable" attorneys' fees and costs.   See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(4), 633(1).  Plaintiff seeks a total of $6,510.00 in attorneys' fees.  See ECF No. 23-3.  Mr. Feinerman has submitted contemporaneous billing records showing the dates and amount of time during which services were rendered, the hourly rate at which services were charged, and the type of services rendered. See id.  Mr. Feinerman also testified at the inquest regarding his background and experience. See ECF No. 22 at 23:7-23.

For the reasons set forth below, this Court respectfully recommends that Plaintiff be awarded reduced attorneys' fees of $5,775.00 and reduced costs of $400.00.

### 1.  Reasonable Attorneys' Fees

To assess the amount of a reasonable fee, courts use the "lodestar" method, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  See,

e.g., Lilly v. City of New York, 934 F.3d 222, 231-32 (2d Cir. 2019) (confirming the long-standing approach to calculating attorneys' fees); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (noting that failing to calculate the lodestar as a starting point to determine a reasonable fee is "legal error"). The lodestar creates a "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany, 522 F.3d 182, 183 (2d Cir. 2008). The party seeking fees bears the burden of showing, by "satisfactory evidence," that the requested hourly rates are reasonable, see Farbotko v. Clinton Cnty. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005), and of establishing that the number of hours for which it seeks compensation is reasonable, Cruz v. Local Union No. 3 of Intern. Brotherhood of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)). "Satisfactory evidence" may include affirmations of other attorneys practicing in the same area of law demonstrating the rates of the community, Volpe v. Nassau Cnty., No. 12 Civ. 2416 (JFB) (AKT), 2016 WL 6238525, at *7 (E.D.N.Y. Oct. 24, 2016), the firm's resume describing the firm's experience and reputation; Weston v. TechSol, LLC, No. 17 Civ. 0141 (CLP), 2018 WL 4693527, at *7 (E.D.N.Y. Sept. 26, 2018); and a lawyer's resume describing his skill and experience, Capone v. Patchogue-Medford Union Free Sch. Dist., No. 04 Civ. 2947 (JS) (MLO), 2011 WL 743573, at *2 (E.D.N.Y. Feb. 23, 2011). Requests for attorneys' fees in the Second Circuit must also be accompanied by contemporaneous time records that show for each attorney the date the work was done, the hours expended, and the nature of the work done. See Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) ("[A]bsent unusual circumstances attorneys are required to submit contemporaneous records with their fee applications.").

### a. Reasonable Hourly Rate

Mr. Feinerman seeks an hourly rate of $350.00 for his work on this case.  See ECF No. 22 at 23:3-6; ECF No. 23-3.  This Court first determines whether this is a reasonable hourly rate for Mr. Feinerman.  To determine the reasonable hourly rate, courts look to "the rate prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Farbotko, 433 F.3d at 209 (internal citation omitted); see Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983) (explaining that "community" is the district where the court sits).  Courts may also consider the following factors:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases[.]"

See, e.g., Arbor Hill, 522 F.3d at 183.

Mr. Feinerman did not submit evidence to establish his skill or reputation in the legal community, but he testified at the inquest regarding his experience.  See ECF No. 22 at 23:7-23. Mr. Feinerman stated that he has over 30 years of experience practicing law and has practiced labor law for approximately six years, handling over a dozen cases representing plaintiffs and defendants.  See id.  Mr. Feinerman also testified that he has trial experience.  See id.

Within this district, rates in NYLL cases generally range from $300 to $450 for partners. See, e.g., Li v. Chang Lung Grp. Inc., No. 16 Civ. 6722 (PK), 2020 WL 1694356, at *15 (E.D.N.Y. Apr. 7, 2020) (noting that $300 to $450 is range of reasonable hourly rates for partners in FLSA cases within the Eastern District of New York); Kliger v. Liberty Saverite

Supermarket Inc., No. 17 Civ. 2520 (FB) (ST), 2018 WL 4782342, at *9 (Sept. 17, 2018), R&R

adopted as modified, 2018 WL 4783964 (E.D.N.Y. Oct. 3, 2018) (noting that the reasonable

hourly rates for wage and hour cases in the district has been set at $300 to $400.  Courts have

held that a rate of $350.00 per hour for a partner is reasonable for an FLSA/NYLL action

resulting in a default judgment.  See, e.g., Li, 2020 WL 1694356, at *15 (applying hourly rate of

$350 for partner in labor case resulting in default judgment); Leon v. Zita Chen, No. 16 Civ. 480

(KAM) (PK), 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (same).

Even though this action was relatively straightforward in light of Defendants' default,

Mr. Feinerman's experience and the favorable outcome for Plaintiff in this case warrant the

requested hourly rate.  This Court respectfully recommends applying the hourly rate of $350.00

for Mr. Feinerman.

### b.  Reasonable Number Of Hours

According to the billing records, Mr. Feinerman claims to have expended 18.6 hours

working on this case.[11]  See ECF No. 23-3.  This Court next evaluates whether the number of

hours billed by counsel is reasonable.  In doing so, the court examines the value of the work

product and "exclude[s] excessive, redundant, or otherwise unnecessary hours."  Concrete

Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07 Civ. 319 (ARR) (VVP), 2010 WL 2539771,

at *5 (Mar. 15, 2010) (quoting Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 2009)),

R&R adopted, 2010 WL 2539661 (E.D.N.Y. June 17, 2010).  "If a court finds that the fee

applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or

disallow certain hours[.]"  Santa Fe Nat. Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00 Civ.

---

[11] In a previous submission to this Court, Mr. Feinerman's time sheet included two hours' work
for attending the inquest on damages.  Mr. Feinerman no longer appears to be seeking attorneys'
fees for those two hours.

7750 (LAP), 2002 WL 498631, at *3 (S.D.N.Y. Mar. 29, 2002) (citing In re "Agent Orange"

Prod. Liab. Litig., 818 F.2d 26, 237 (2d Cir. 1987)).  The Second Circuit does not require courts

to undertake a line-by-line review of a party's fee application.  See Marion S. Mishkin L. Off. v.

Lopalo, 767 F.3d 144, 150 (2d Cir. 2014); Lunday v. Albany, 42 F.3d 131, 134 (2d Cir. 1994)

(per curiam).  Instead, a court may "exercise its discretion and use a percentage deduction as a

practical means of trimming fat."  Marion S. Mishkin L. Off., 767 F.3d at 150 (quoting

McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d

91, 95 (2 Cir. 2006)); see In re "Agent Orange" Prod. Liab. Litig., 818 F.2d at 237; Black v.

Nunwood, Inc., No. 13 Civ. 7207 (CHW), 2015 WL 1958917, at *6 (S.D.N.Y. Apr. 30, 2015).

Mr. Feinerman failed to establish the reasonableness of all of the hours worked on this

case.  For example, on January 15, 2020, Mr. Feinerman billed 1.5 hours for preparing and filing

an amended complaint in addition to having already billed five hours for preparing and filing the

original complaint.  See ECF No. 23-3.  A side-by-side comparison of the original complaint and

the amended complaint shows minimal changes between the two pleadings.  Compare ECF No.

1, with ECF No. 15.  The only significant change to the amended complaint is the addition of

paragraphs 13 through 16, which comprised of allegations relating to Russian Dessert's business.

See ECF No. 15 ¶¶ 13-16.  Where the amendment of the pleading was necessitated by Plaintiff's

own failure to adequately plead FLSA coverage in the first instance, see Dkt. Status Report

Order 7/24/19, this Court finds that it is unreasonable for Plaintiff to seek compensation for that

additional work and finds that 1.5 hours is disproportionate to the amount of work reflected in

the amended complaint, especially when there is no indication that part of the time was spent on

additional tasks, such as legal research.  On March 9, 2020, Mr. Feinerman billed one hour for

preparing and filing a request for certificate of default in addition to having already prepared and

filed a request for certificate of default.  See ECF No. 23-3.  Another side-by-side comparison of

the two requests shows minimal changes, with the only change paragraph 6 relating to the

amount of damages.  Compare ECF No. 9, with ECF No. 17.  This Court finds that it is

unreasonable for Plaintiff to seek compensation for the duplicative work.

Next, the billing records include instances where Mr. Feinerman performed work that

could reasonably have been performed by a paralegal professional or administrative assistant.

For example, throughout this case, Mr. Feinerman spent a total of one hour preparing proofs of

service and filing such proofs with the court.  See ECF No. 23-3.  On October 10, 2019, Mr.

Feinerman spent 0.3 hours filing his motion for default and another 0.3 hours on July 16, 2020

filing his new motion for default.  See id.  Mr. Feinerman does not explain why it was reasonable

for these tasks to have been performed by experienced counsel as opposed to an individual with a

lower billing rate or an administrative staff with no billing rate.  See, e.g., LBBW Luxemburg

S.A. v. Wells Fargo Sec. LLC, No. 12 Civ. 7311 (JPO) (KNF), 2016 WL 5812105, at *9

(S.D.N.Y. Sept. 22, 2016) (finding unreasonable the use of a senior attorney to perform work

that could have been performed by an attorney with less experience); E.S. v. Katonah-Lewisboro

Sch. Dist., 796 F. Supp. 2d 421, 431-32 (S.D.N.Y. 2011) ("A court may make [across-the-board

percentage] reductions when attorneys engage in less skilled work, like filing and other

administrative tasks."), aff'd, 487 F. App'x 619 (2d Cir. July 6, 2012).  This Court does not

believe it would be reasonable to award Plaintiff attorneys' fees for these tasks at a reduced rate

as they are clerical tasks that would have been better performed by administrative staff.  See

Missouri v. Jenkins by Agyei, 491 U.S. 274, 288 n.10 (1989) (cautioning that "purely clerical or

secretarial tasks should not be billed at a paralegal rate"); Lilly, 934 F.3d at 234 (finding that

district court did not commit legal error in reducing attorneys' fee award to account for clerical tasks performed by attorney).

Based on these issues, this Court finds it appropriate to reduce the number of hours that Mr. Feinerman billed for working on this case.  This Court respectfully recommends a twenty percent reduction from 18.6 hours.  See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (affirming district court's fee reduction of twenty percent in the attorneys' time expenditures "for vagueness, inconsistencies, and other deficiencies in the billing records"); Finkel v. Millennium Fire Servs., LLC, No. 09 Civ. 540 (RRM) (CLP), 2011 WL 866995, at *18-19 (Feb. 16, 2011) (recommending a fifteen percent reduction of hours billed on matter based on inaccuracies and inconsistencies), R&R adopted, 2011 WL 1321986 (E.D.N.Y. Apr. 6, 2011); Barney v. Edison, No. 99 Civ. 823 (DGT) (SMG), 2010 WL 8497627, at *3-4 (Jan. 29, 2010) (recommending across-the-board reduction in fees of fifteen percent), R&R adopted, 2012 WL 911821 (E.D.N.Y. Mar. 16, 2012).

The adjustment yields a reduced number of 14.88 hours.  Applying the reduced number of hours by the hourly rate of $350.00, this Court respectfully recommends awarding Plaintiff $5,208.00 in attorney's fees.

### 2.  Reasonable Costs And Disbursements

Plaintiff also seeks costs in his motion for default judgment.  See ECF No. 19 ¶ 12.   In previous submissions to this Court, Plaintiff sought reimbursement of $700.00 in costs.  In the latest submission, Plaintiff did not specify the amount of costs he seeks.  See ECF Nos. 23-2, 23-3.  Plaintiff did not provide supporting documents, invoices or receipts in support of the application for costs,.

As with attorneys' fees, the fee applicant bears the burden to explain and justify the costs. See, e.g., Martinez, 2017 WL 5033650, at *29 ("[T]he party moving for costs bears the burden of demonstrating the reasonableness of each charge[.]"); Pennacchio v. Powers, No 05 Civ. 985 (RRM) (RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) ("The fee applicant bears the burden of adequately documenting and itemizing the costs requested.").  Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable.  Jemine v. Dennis, 901 F. Supp. 3d 365, 394 (E.D.N.Y. 2012) (citation omitted); see Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc., No. 15 Civ. 5737, 2017 WL 5564892, at *3 (E.D.N.Y. Nov. 3, 2017) ("Court filing fees, process servers, printing and photocopying, messenger services, postage, telephone costs, transcripts, travel, transportation, meals, and other [o]ut of pocket litigation costs are generally recoverable if they are necessary to the representation of the client.") (citations & internal quotation marks omitted).  If the plaintiff fails to submit adequate supporting documentation for the costs requested, the court may reduce the costs.  See Swartz v. HCIN Water St. Assocs., LLC, No. 17 Civ. 4187 (ER), 2018 WL 5629903, at *7 (S.D.N.Y. Oct. 31, 2018) ("The plaintiff bears the burden of proving its reasonable costs, which a court may reduce if the plaintiff fails to submit adequate supporting documentation."); Gil v. Frantzis, No. 17 Civ. 1520 (ARR) (SJB), 2018 WL 4522094, at *15 (E.D.N.Y. Aug. 17, 2018) (recommending recovery of reduced costs to prevailing plaintiff who did not submit supporting evidence), R&R adopted as modified, 2018 WL 4299987 (E.D.N.Y. Sept. 10, 2018).

Although Plaintiff did not submit evidence for the $400.00 filing fee, this Court respectfully recommends that Plaintiff be awarded such cost.  This Court takes judicial notice that the filing fee in this district is $400.00.  See, e.g., Joe Hand Promotions v. Elmore, No. 11 Civ. 3761 (KAM) (SMG), 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013) (taking judicial

notice of the filing fee for the Eastern District of New York); <u>Phillip Morris USA, Inc. v. Jackson</u>, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011) (same).  This Court also notes that the docket reflects Plaintiff's payment of the filing fee.  <u>See</u> Dkt. Entry12/26/2018 ("COMPLAINT against All Defendants filing fee $ 400, receipt number ANYEDC-11054605[.]"); <u>Shalto v. Bay of Bengal Kabob Corp.</u>, No. 12 Civ. 920 (KAM) (VMS), 2013 WL 867420, at *2 (E.D.N.Y. Mar. 7, 2013) (filing fees are recoverable without supporting documentation if verified by the docket).  Thus, awarding $400.00 is appropriate in this case.  <u>See, e.g.</u>, <u>Travel Leaders Grp., LLC v. Corley</u>, No. 19 Civ. 1595 (GBD) (JLC), 2019 WL 6647319, at *17 (S.D.N.Y. Dec. 5, 2019) (awarding $400 in costs after taking judicial notice of $400 filing fee); <u>Tacuri v. Nithun Constr. Co.</u>, No. 14 Civ. 2908 (CBA) (RER), 2015 WL 790060, at *14 (E.D.N.Y. Feb. 24, 2015) (noting that a court can take judicial notice of the court's filing fee and award the cost without plaintiffs submitting supporting evidence).

It is respectfully recommended that Plaintiff be awarded $400.00 in costs.

### D.  Post-Judgment Interest On Plaintiff's Damages

Although Plaintiff's amended complaint requested an award of post-judgment interest, <u>see</u> ECF No. 1 at 16 ¶¶ C, G, Plaintiff did not renew his request in his motion for default judgment, <u>see generally</u> ECF No. 19.  Nonetheless, such omission does not foreclose an award of post-judgment interest in the case.  "Pursuant to 28 U.S.C. § 1961, the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  <u>Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n</u>, 852 F.3d 217, 223 (2d Cir. 2017) (citation & internal quotation marks omitted); <u>Begum v. Ariba Disc., Inc.</u>, No. 12 Civ. 6620 (DLC), 2015 WL 223780, at *8 (S.D.N.Y. Jan. 16, 2015) (awarding post-judgment interest in a FLSA and NYLL wage-and-hour case).  It is well-established that, in calculating or applying such post-judgment

interest, the courts do not exercise any judicial discretion.  See Tru-Art Sign, 852 F.3d at 223

("[Section 1961's] terms do not permit of the exercise of judicial discretion in its application.")

(citation & internal quotation marks omitted); Philips Lighting Co. v. Schneider, 636 F. App'x 54,

59 (2d Cir. 2016) ("[C]ourts calculating such interest do not enjoy some amorphous equitable

power to select a date other than the date of the entry of the judgment to trigger the running of

interest, even if their laudable aim is to effectuate the compensatory purpose of the postjudgment

[sic.] interest statute[.]") (citation & internal quotation marks omitted).  Therefore, Plaintiff is

entitled to post-judgment interest.

Post-judgment interest is awarded on all sums awarded concerning a plaintiff's FLSA and

NYLL wage-and-hour claims, including attorneys' fees and costs.  See, e.g., Fermin v. Las

Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 53 (E.D.N.Y. 2015) (recommending award of

post-judgment interest on plaintiff's total damages, including compensatory and liquidated

damages, attorneys' fees and costs); Tacuri v. Nithin Constr. Co., No. 14 Civ. 2908 (CBA)

(RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015) (same).

The amount of post-judgment interest is calculated from the date of the entry of the

judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

published by the Board of Governors of the Federal Reserve System, for the calendar week

preceding the date of the judgment.  See 28 U.S.C. § 1961.  Such interest accrues until the

judgment is paid in full.

This Court respectfully recommends awarding post-judgment interest from the date the

Clerk of Court enters judgment in this action until the date of payment, using the federal rate set

forth in Section 1961.

## IV.    CONCLUSION

In light of the foregoing, this Court respectfully recommends that Defendants be jointly and severally liable to Plaintiff for a total of $39,744.00 in damages, comprising the following:

1. $4,200.00 in unpaid minimum wages;
2. $10,368.00 in unpaid overtime wages;
3. $14,568.00 in liquidated damages;
4. $5,000.00 in statutory damages;
5. $5,208.00 in attorneys' fees; and
6. $400.00 in costs.

This Court respectfully recommends that judgment be entered in the amount of $39,744.00 in favor of Plaintiff and against Defendants.  Defendants are also liable for post-judgment interest from the date the Clerk of Court enters judgment in this action until the date of payment, using the federal rate set forth in 28 U.S.C. § 1961.

## V.    OBJECTIONS

A copy of this report and recommendation is being provided to Plaintiff's counsel via ECF.  The Clerk of the Court is respectfully requested to mail copies of this report and recommendation to Defendants as follows:

(i)    Rafael Ibragimov at 100-02 Rockaway Blvd., Basement, Ozone Park, New York 11417;

(ii)    Rafael Ibragimov at 14411 71st Avenue Flushing, New York 11367;

(iii)    Russian Desserts, Inc. at 295 Avenue O, Brooklyn, New York 11230;

(iv)    Russian Desserts, Inc. at 100-02 Rockaway Blvd., Basement, Ozone Park, New York 11417.

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R.

39

Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

Dated: Brooklyn, New York
      February 12, 2021


_____*Vera M. Scanlon*_____
        VERA M. SCANLON
   United States Magistrate Judge